COURT OF APPEALS
DECISION
DATED AND FILED

July 18, 2025
Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP2368-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CF223

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

SAMUEL R. OSORNIO,

  DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Columbia County: TODD J. HEPLER, Judge. *Reversed and cause remanded with directions.*

Before Kloppenburg, P.J., Blanchard, and Taylor, JJ.

¶1 BLANCHARD, J. Samuel Osornio was charged with first-degree reckless homicide by delivery of heroin, based on allegations that he delivered

heroin to A.B. and that A.B. fatally overdosed on this heroin.[1]  Osornio was separately charged with delivery of the heroin that allegedly was a substantial contributor to A.B.'s death.  A jury found Osornio guilty on both charges, although the circuit court entered a conviction on the reckless homicide charge alone.  Osornio raises two issues on appeal.

¶2      Osornio contends that he is entitled to a new trial because the circuit court improperly admitted other-acts evidence elicited by the prosecution.  *See* WIS. STAT. § 904.04(2) (2023-24) ("evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith"); *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998) (setting forth test to determine whether other-acts evidence is admissible).[2]  This consisted of testimony by Y.Z. that Osornio delivered heroin to Y.Z. just minutes before Osornio allegedly delivered to A.B. the heroin that the State alleges was a substantial factor in causing A.B.'s death.  We conclude that Osornio fails to establish that the court erred in admitting the other-acts evidence, which the prosecution relied on for the limited purpose of attempting to rebut one of Osornio's defenses, namely, that the drug that he intended to deliver to A.B. was marijuana, not heroin.

¶3      Osornio's other argument involves a multiplicity issue, based on the fact that the State charged him with both the reckless homicide of A.B. and with the delivery of the heroin that allegedly resulted in A.B.'s death.  This exposed

---

[1] We refer to the victim as A.B. and to a witness who was called by the prosecution at trial as Y.Z.; these are not their actual initials.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

Osornio to the potential for punishment twice for the same offense of delivering heroin to A.B. Osornio contends that he is entitled to a new trial because his two trial attorneys were constitutionally ineffective in failing to timely recognize and address the multiplicity issue. Osornio contends that, if his counsel had moved the circuit court before trial to dismiss the heroin delivery charge, this would have set up a follow-up request by the defense that the court give a jury instruction to treat the delivery charge as a lesser-included offense of the reckless homicide charge.[3] And, according to Osornio, based on the way jury deliberations played out at trial, if the jury had been instructed regarding the lesser-included offense from the start, it would have found him guilty of, at worst, the lesser offense of heroin delivery. Applying the Sixth Amendment standards for ineffective assistance of counsel, we conclude that Osornio is entitled to a new trial because he has shown both deficient performance and prejudice. Accordingly, we reverse for a new trial.

## BACKGROUND

¶4 Count One in the criminal complaint and information against Osornio alleged first-degree reckless homicide, in violation of WIS. STAT. § 940.02(2). According to the complaint, Osornio delivered heroin to A.B. in the parking lot of a store in the City of Portage, Columbia County, on February 6, 2020, and A.B. died on or about the next day from the combined effects of A.B.'s use of that heroin and alcohol. Count Two alleged that Osornio violated WIS.

---

[3] As explained *infra* in note 9, Osornio is incorrect in arguing that the prosecution was limited to charging and proceeding to trial on only one of the two offenses. But for reasons we discuss in this opinion, this error does not undermine Osornio's broader point that defense counsel at trial missed the opportunity to consider asking the circuit court to give a lesser-included instruction, with the reasonable probability that this would have resulted in the jury returning a verdict on only a single count, namely, the lesser of the two offenses.

STAT. § 961.41(1)(d)1. when he delivered the heroin to A.B. in the parking lot, with the amount of heroin being three grams or less.[4] Thus, Counts One and Two alleged precisely the same conduct—Osornio's intentional delivery of three grams or less of heroin to A.B., in violation of § 961.41(1)(d)1.—but Count One included the additional allegations that A.B. used that heroin and that this heroin use was a substantial factor in causing his death.

¶5     Regarding the other-acts evidence issue, the circuit court granted a prosecution motion before trial to allow the admission of evidence aimed at establishing the following: that Osornio delivered heroin to Y.Z. late on the morning of February 6 in the Portage parking lot, just minutes before he allegedly delivered a separate batch of heroin to A.B. in the same parking lot. As discussed in more detail in the Discussion section below, Y.Z. gave testimony to this effect at trial.

¶6     Regarding the multiplicity issue, the circuit court instructed the jury at trial, consistent with WIS JI—CRIMINAL 1021, that the prosecution, in charging first-degree reckless homicide, assumed the burden of proving beyond a reasonable doubt each of the following five elements on the facts of this case:

    1. Osornio delivered a substance to A.B.;

    2. The substance was heroin;

---

[4] On its face, the criminal complaint is ambiguous regarding the State's theory on Count Two, the heroin delivery count. The complaint leaves unclear whether the charge was that Osornio delivered heroin to A.B. or instead that he delivered heroin to "a female" (later identified to be Y.Z.; A.B. was male) shortly before the alleged delivery to A.B. But without dispute between the parties, the circuit court removed any ambiguity at trial by instructing the jury that the alleged delivery to Y.Z. was conduct "for which [Osornio] is not on trial," and therefore Count Two was based on his alleged heroin delivery to A.B. and not on his alleged heroin delivery to Y.Z.

3. Osornio knew or believed that the substance was heroin;

4. A.B. used the heroin that was delivered by Osornio; and

5. A.B. died as a result of A.B.'s use of this heroin, meaning that it was a substantial factor in causing the death.

¶7    Consistent with WIS JI—CRIMINAL 6020, the circuit court instructed the jury that delivery of a controlled substance has the following three elements on the facts of this case:

1. Osornio delivered a substance to A.B.;

2. The substance was heroin; and

3. Osornio knew or believed that the substance was heroin.

¶8    It is not disputed that Counts One and Two are multiplicitous on the facts of this case. The two offenses are identical in law and fact under the "elements-only" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), in that all of the elements of the delivery charge are also elements in the homicide charge based on the same alleged facts, and neither side argues that the legislature intended to allow multiple punishments for this criminal conduct. *See State v. Ziegler*, 2012 WI 73, ¶¶59-63, 342 Wis. 2d 256, 816 N.W.2d 238.

¶9    But the multiplicity issue created by the charging of both offenses was not noticed by either party or the circuit court until after a series of events, including extensive jury deliberations, which are detailed in the Discussion section below.

¶10    After defense counsel eventually called the multiplicity issue to the attention of the circuit court, the court attempted to resolve the issue by giving a supplemental instruction summarized below. In the end, the jury returned guilty

verdicts on both counts and the circuit court entered a guilty verdict only on Count One, reckless homicide. The court sentenced Osornio on that single count.

¶11 Represented by new counsel, Osornio filed a postconviction motion for a new trial, claiming ineffective assistance of trial counsel based on the multiplicity issue that we discuss below, and the circuit court held a *Machner* hearing.[5] The two defense attorneys both testified that they did not notice the multiplicity issue until the jury was deep into its deliberations, and defense counsel identified no strategic reason for not addressing the issue sooner.

¶12 The circuit court denied the postconviction motion. Osornio appeals.

## DISCUSSION

¶13 For reasons explained below, we conclude that a new trial is required as a result of ineffective assistance of trial counsel in connection with the multiplicity issue. Both sides treat Osornio's challenge to the other-acts evidence strictly as an alternative basis to grant Osornio a new trial. This approach could suggest that this court should limit its attention to the ineffective assistance issue if we conclude, as we do, that a new trial is required based on ineffective assistance. *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Typically, an appellate court should decide cases on the narrowest possible grounds."). But, primarily in the interest of judicial efficiency,

---

[5] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979) (describing need for evidentiary hearing to allow circuit court to evaluate the constitutional effectiveness of the defendant's trial counsel, at which trial counsel typically testifies).

we explain our conclusion that the other-acts evidence is admissible because this issue may well resurface at a retrial and it is fully briefed on appeal.

## I. Other-Acts Evidence

### A. Other-Acts Legal Standards

¶14 Evidence of "other crimes, wrongs, or acts" of a person (here, Osornio) "is not admissible to prove" the person's character "in order to show that the person acted in conformity therewith." *See* WIS. STAT. § 904.04(2)(a). But this rule "does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Under Wisconsin case law, such evidence is admissible if all of the following is shown:

- the evidence is offered for a permissible purpose under § 904.04(2)(a);

- the evidence is relevant under WIS. STAT. § 904.01; and

- the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice under WIS. STAT. § 904.03.

*State v. Dorsey*, 2018 WI 10, ¶8, 379 Wis. 2d 386, 906 N.W.2d 158 (citing *Sullivan*, 216 Wis. 2d at 772-73). The proponent of the evidence must identify a permissible purpose and bears the burden of showing relevance; in contrast, the opponent has the burden of demonstrating that the probative value of the evidence is substantially outweighed by the danger that it will create unfair prejudice. *State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399.

¶15 The issue is whether the circuit court erroneously exercised its discretion when it allowed the admission of other-acts evidence over Osornio's objection. *See State v. Payano*, 2009 WI 86, ¶40, 320 Wis. 2d 348, 768 N.W.2d

832. To decide that issue, we assess "whether the circuit court 'reviewed the relevant facts; applied a proper standard of law; and using a rational process, reached a reasonable conclusion.'" ***Id.***, ¶41 (quoted source omitted). "Although the proper exercise of discretion contemplates that the circuit court explain its reasoning, when the court does not do so, we may search the record to determine if it supports the court's discretionary decision." ***Randall v. Randall***, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737; *accord* ***State v. Hurley***, 2015 WI 35, ¶29, 361 Wis. 2d 529, 861 N.W.2d 174.

### B.      Additional Background

¶16     The prosecution moved the circuit court before trial for a ruling allowing the admission of evidence that, approximately five minutes before Osornio allegedly delivered heroin to A.B. in the parking lot of a retail store, Osornio delivered a separate batch of heroin to Y.Z. in the same parking lot. The prosecution proffered that Y.Z. would testify to this.

¶17     One prosecution argument for the admission of the other-acts evidence was that its permissible probative value would be to support a finding by the jury that Osornio intended to deliver heroin and not marijuana to A.B. The prosecution's goal was to counter Osornio's anticipated defense to both Counts One and Two that he delivered marijuana, not heroin, to both A.B. and Y.Z.[6] Consistent with that position, in oral argument to the court, the prosecutor

---

[6] This was not the only argument made by the prosecution in support of its other-acts motion. We refer below to additional prosecution arguments in the course of addressing arguments made by Osornio.

8

said in part that the value of Y.Z.'s testimony was that it would show that it was heroin that Osornio sold to Y.Z. just before he sold heroin to A.B.

¶18    Defense counsel opposed admission of the other-acts evidence. Counsel argued that it would amount to nothing more than "propensity evidence." That is, counsel contended that its primary effect would be to support the impermissible inference that, because Osornio delivered heroin to Y.Z., he should be found guilty on both charges because he is the kind of person who deals heroin. *See* WIS. STAT. § 904.04(2)(a).  Defense counsel asked that, if the circuit court granted the prosecution motion, the court give a limiting instruction discouraging the jury from relying on it as propensity evidence.

¶19    The circuit court ruled that the prosecution could elicit the other-acts evidence for "permissible purposes," such as "motive" or "lack of mistake."  The court asked defense counsel to draft a limiting instruction for review by the prosecution and the court.

¶20    During trial, Y.Z. gave the following brief testimony, corroborated in part by video evidence that the prosecution played for the jury.  At approximately 11:35 a.m. on February 6, 2020 (which the jury would learn was about five minutes before the alleged delivery to A.B.), Y.Z. met Osornio in the parking lot of a Portage store.  Y.Z. bought heroin from Osornio, and this was not the first time that he had sold heroin to Y.Z.  During cross examination, defense counsel suggested in part that, instead of buying heroin from Osornio that day, Y.Z. gave him Suboxone (a medication used to treat opioid use disorder) in exchange for marijuana.  Y.Z. denied this in her responses.

¶21 With no objection from the prosecution, the circuit court gave the jury the following limiting instruction regarding the other-acts evidence, based on WIS JI—CRIMINAL 275:

> Evidence has been presented regarding other conduct of the defendant for which the defendant is not on trial.
>
> Specifically, evidence has been … presented that the defendant provided heroin to [Y.Z.]  If you find that this conduct did occur, you should consider it only on the issue of context or background.
>
> You may not consider this evidence to conclude that the defendant has a certain character or certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case.
>
> The evidence was received on the issue of context or background, that is, to provide a more complete presentation of the evidence relating to the offense charged.
>
> You may consider this evidence only for the purpose I have described, giving it the weight you determine it deserves.  It is not to be used to conclude that the defendant is a bad person and for that reason is guilty of the offense charged.

¶22 During its initial closing argument, the prosecution made the following argument based on the other-acts evidence (without elaborating on these points in a meaningful way in its rebuttal closing argument):

> In the … minutes preceding the drug transaction that took place between [A.B.] and Mr. Osornio, [Y.Z.] is this some other chick that needs to be served first,[7] and [Y.Z.] came before you and admitted quite plainly that she was a heroin addict.  Not … a THC user.  She doesn't use

---

[7] The phrase "some other chick that needs to be served first" was a reference to the following trial evidence.  In a text message that was one in a series exchanged by Osornio and A.B. on the day of the two alleged heroin deliveries, Osornio stated, "I gotta serve this chick."

10

> marijuana, but she admitted that she was a heroin addict. And she admitted to you that on this particular day, she arrived in the [store] parking lot, went to Mr. Osornio's vehicle, and purchased heroin.
>
> For context, that helps you understand the transaction that happened in [A.B.'s] white Infinity…. You can see—or you heard the testimony that … Mr. Osornio's Jeep—admittedly, it's beyond any doubt that it's him and his Jeep—pulls into the [store] parking lot, never enters the store. He's there to sell, not to buy. He sells heroin to [Y.Z.], and then he sells heroin to [A.B.]

¶23 Defense counsel, in closing argument, challenged Y.Z.'s credibility based on Y.Z.'s "prior convictions for lying," her history as a "[l]ong-time heroin user," and on the propositions that Y.Z. once "had a known drug house in Adams County" and that Y.Z. "admitted that she's the one who connected [Osornio] with his source of heroin." Counsel suggested that Y.Z. lied when she testified that she had never delivered heroin to another person.

### C.    Analysis

¶24 We conclude that Osornio fails to show that the circuit court erroneously exercised its discretion in allowing the prosecution to elicit the other-acts evidence. Under the circumstances here, a reasonable judge could determine that Y.Z.'s testimony was offered for the permissible purpose of purporting to show Osornio's intent (that is, his conscious objective) of delivering heroin (not marijuana) to A.B., that it was relevant, and that its probative value was not substantially outweighed by the risk that it would create unfair prejudice.

*Permissible Purpose*

¶25 For the most part, Osornio challenges the State's ability to satisfy the first prong of the test. He contends that the other-acts evidence was not in fact admitted based on the intent purpose. We conclude that the State has met its

11

burden on this prong. The jury would reasonably have understood that it was to rely on Y.Z.'s testimony, if the jury deemed it credible, only to show Osornio's intent to deliver heroin and not marijuana to A.B. and further would reasonably have understood that it should not rely on the testimony to draw conclusions about Osornio's character or a character trait.

¶26    As Osornio acknowledges, proof of intent is one permissible purpose for other-acts evidence. *See* WIS. STAT. § 904.04(2)(a) (rule against character evidence "does not exclude the evidence when offered for other purposes, such as … intent"). Further, Osornio acknowledges that the prosecution in its written pretrial motion identified intent as a purpose, in an attempt to meet its burden of proving intentional delivery of heroin to A.B.

¶27    Osornio's argument is that the other-acts evidence was not properly admitted because: the prosecution did not use the word "intent" at the hearing on this issue; the prosecution made alternative arguments based on its purported purpose to use the other-acts evidence to provide "context" or to complete the "panorama" of the charges; the circuit court did not use the word "intent" in making its decision; and the jury was not instructed using the specific term "intent."

¶28    We agree with Osornio to the extent that the prosecution in its arguments to the circuit court, the court in explaining its decision, and the court in giving the limiting instruction, could have been clearer in identifying intent as one permissible purpose. And, in particular, we agree with Osornio that one argument that the prosecution advanced in the circuit court was flawed. The prosecution's argument was that Y.Z.'s testimony was admissible because it was "part of the panorama of evidence needed to completely describe the crime that occurred and

is thereby inextricably intertwined with the crime." *See State v. Dukes*, 2007 WI App 175, ¶¶25, 28-30, 303 Wis. 2d 208, 736 N.W.2d 515 (evidence of drugs in the possession of someone who had just left defendant's residence was permissibly introduced to prove an element of the defendant keeping a drug house). Here, unlike the situation in *Dukes*, the alleged heroin delivery to Y.Z. was criminal conduct that was distinct from the charged heroin delivery to A.B. At least so far as the prosecution presented its arguments to the circuit court, this was not evidence that was necessary to complete the picture of the alleged delivery to A.B. The State does not show that the "panorama" concept applies here.

¶29     At the same time, however, defense counsel was properly placed on notice through the prosecution's pretrial motion that the prosecution identified Osornio's intent as one permissible purpose for Y.Z.'s testimony. Further, when the circuit court granted the motion to admit this evidence and identified motive and lack of mistake as permissible purposes, this could reasonably be interpreted to have been a reference to the intent concept—that proof of the alleged delivery of heroin (as opposed to marijuana) to Y.Z. could properly support proof of the alleged delivery of  heroin (as opposed to marijuana) to A.B. Motive, like intent, is an acceptable purpose under WIS. STAT. § 904.04(2). And, while "motive" typically refers to a person's underlying reason or cause to act, in the context of the simple facts here, the court's use of "motive" was plainly meant to cover the concept of Osornio's conscious objective of delivering heroin and not marijuana. *See Randall*, 235 Wis. 2d 1, ¶7 (court of appeals may search the record to determine whether it supports circuit court discretionary decision). That is, the court was evidently referring to the same intent concept that the prosecution identified in its written motion and alluded to in its oral argument, which we conclude was a permissible purpose. *See Peasley v. State*, 83 Wis. 2d 224, 232,

13

265 N.W.2d 506, 510-11 (1978) ("evidence relating to the defendant's prior sales activities as evidence of his intent to deliver the cocaine" was admissible as other-acts evidence).

¶30　Turning to the limiting instruction given to the jury regarding the other-acts evidence, it is true that, as summarized above, the instruction spoke in terms of evidence "received on the issue of context or background, that is, to provide a more complete presentation of the evidence relating to the offense charged." This aspect of the instruction, standing alone, was arguably ambiguous.

¶31　But, as also summarized above, the only meaningful reference that the prosecution made to the other-acts evidence in its closing arguments was unambiguously rooted in the intent purpose. Specifically, the prosecutor told the jury that, if the jury chose to credit Y.Z.'s testimony, it was relevant to show that Y.Z. got heroin from Osornio and not marijuana, from which (along with other evidence) the jury was invited to infer that A.B. also got heroin from Osornio. The prosecutor used the potentially ambiguous word "context." In doing so, however, the prosecutor unambiguously made the point that Osorio "sells heroin to [Y.Z.], and then he sells heroin to" A.B. For its part, the defense invited jurors to dismiss Y.Z.'s testimony about getting heroin from Osornio as self-serving and false, which the jury was free to do. This left the jury with a potentially ambiguous "context" instruction, but with only one reasonable way to interpret it.

If the jury credited Y.Z.'s testimony, the jury could consider it in assessing Osornio's alleged purpose of delivering heroin to A.B.[8]

¶32    In sum on this prong of the *Sullivan* test, Osornio fails to persuade us that there is a risk that the jury could reasonably have failed to understand that it was to consider the evidence as bearing on the disputed issue of intent to distribute heroin. The only reasonable interpretation of the record is that the jury should have considered Y.Z.'s testimony (if it chose to credit the testimony) not to form an opinion about Osornio's character or any character trait, but instead for any light that it might shed on his alleged intent to deliver heroin and not marijuana to A.B.

*Relevance*

¶33    "[T]he relevance inquiry is two-fold: first, '[t]he evidence must relate to a fact or proposition of consequence'; second, the evidence must have probative value, that is, 'a tendency to make a consequential fact more or less probable than it would be without the evidence.'" *Dorsey*, 379 Wis. 2d 386, ¶44 (cited authority omitted).

¶34    Osornio essentially acknowledges that, if the other-acts evidence was offered for a permissible purpose, it was relevant to show Osornio's intent to

---

[8] The State briefly contends that Osornio cannot be heard to argue that the circuit court admitted Y.Z.'s testimony for an impermissible purpose because Osornio drafted the limiting instruction. We note that this occurred at the direction of the circuit court, and that the draft created by the defense was reviewed by the prosecution and accepted by the circuit court for delivery to the jury. On a related point, the State also now contends that a permissible purpose was to provide "context and background," by which the State may mean to refer to something other than intent. But we need not address these contentions by the State, because we conclude that the court did not erroneously exercise its discretion in allowing Y.Z.'s testimony for the purpose of intent.

sell heroin to A.B., conceding the issue. We conclude that the State has shown the second prong of the test.

*Probative Value Compared with Unfair Prejudice*

¶35 We conclude that Osornio fails to show that the probative value of the other-acts evidence was substantially outweighed by the risk that it would create unfair prejudice. When Osornio's argument about a permissible purpose is resolved against him, as we do for the reasons discussed above, he offers little argument on the third prong. He notes that the circuit court itself at one point expressed to counsel, outside the presence of the jury, confusion about whether Y.Z.'s testimony was "other acts" evidence or instead direct evidence on Count Two. From this, Osornio contends that the jury must have shared that confusion. But Osornio does not support the premise of confusion either by the court or by the jury, at least by the time the jury received its initial set of instructions from the court. The court clearly conveyed to the jury that Y.Z.'s testimony was not direct evidence on Count Two, but instead should be considered for limited purposes related to the alleged delivery to A.B. *See supra* note 4.

¶36 Further, we agree with the State's characterization of Y.Z.'s testimony as "brief and sterile," which reduced the likelihood that the other-acts evidence could have caused the jury to base its verdict on emotions such as outrage, disgust, or other improper considerations.

¶37 In sum on the other-acts evidence issue, we conclude that the circuit court had a reasonable basis to conclude that the State carried its burden on the first two prongs of the ***Sullivan*** test and that Osornio failed to carry his burden on the third prong.

## II. Ineffective Assistance on Multiplicity Issue

¶38    As stated above, there is no dispute that, based on the alleged facts here, Counts One and Two were identical in law and fact under the "elements-only" test set forth in *Blockburger*, 284 U.S. at 304, and that the legislature did not intend to allow multiple punishments for this criminal conduct. *See Ziegler*, 342 Wis. 2d 256, ¶¶59-63. The prosecution was free to pursue both charges at trial but, given the bar against double jeopardy, Osornio could be punished for only one.[9]

¶39    Unlike in some appeals that involve multiplicity, however, Osornio does not argue that he received multiple punishments for the same offense. For example, our supreme court has addressed claims by a defendant that his right to be free of double jeopardy was violated, first, when he pleaded no contest to and was sentenced for both second-degree reckless homicide and homicide by intoxicated use of a vehicle and, second, when he pleaded to and was sentenced for both of two counts of second-degree reckless endangerment. *See State v. Lechner*, 217 Wis. 2d 392, 396-98, 576 N.W.2d 912 (1998). Here, in contrast, the

---

[9] Osornio argues that the prosecution was obligated to choose between pursuing the reckless homicide charge or the heroin delivery charge, but this is incorrect. "[I]t is permissible to *charge* more than one count" in such circumstances, "even if the state may not *punish* a defendant on more than one count." *See State v. Davison*, 2003 WI 89, ¶¶38, 51-52, 263 Wis. 2d 145, 666 N.W.2d 1 (second emphasis added) (citing *Ohio v. Johnson*, 467 U.S. 493, 500 (1984)); *see also* WIS. STAT. §§ 939.65, 939.66(1) (statutes generally authorizing the bringing of multiplicitous charges but allowing conviction on only one). "While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent[s] for such multiple offenses in a single prosecution." *Johnson*, 467 U.S. at 500. It remains, however, that defense counsel failed to recognize that Osornio could not be punished on both counts and that, therefore, a lesser-included instruction was an option.

17

multiplicity issue was brought to the circuit court's attention in time for the court to enter a conviction and sentence Osornio on the reckless homicide charge alone.

¶40    Osornio argues in pertinent part that deficient performance by his attorneys related to multiplicity cost him the probable outcome of a conviction on, at most, the delivery charge.    As part of this argument, Osornio contends, incorrectly, that defense counsel should have recognized that the prosecution, in addressing Osornio's alleged delivery of heroin to A.B., was required to choose between charging either a single count of reckless homicide or a single count of heroin delivery. *See supra* note 9 (regarding the incorrect argument).  But Osornio correctly contends that, because the State charged reckless homicide, either side could have requested an instruction on the lesser-included offense of heroin delivery.  This instruction would have informed the jury that it must "make every reasonable effort to agree unanimously on [its] verdict on the" greater offense of reckless homicide "before considering" the lesser charge of heroin delivery, and to turn to the lesser offense only "after full and complete consideration of the evidence."  WIS JI—CRIMINAL 112.[10]

---

[10] We observe that, if the prosecution here had elected to proceed to trial on the more serious reckless homicide charge alone, defense counsel might have considered the all-or-nothing strategy of choosing not to pursue a lesser-included instruction. *See State v. Kimbrough*, 2001 WI App 138, ¶32, 246 Wis. 2d 648, 630 N.W.2d 752 (reasoning that, given evidence at issue, a reasonable defense counsel "might decide that an all-or-nothing strategy was viable," *i.e.*, seeking the better potential outcome of acquittal on the greater offense—walking away without a conviction—and giving up the potential relatively less attractive outcome of a conviction on the lesser-included offense alone); *see also State v. Eckert*, 203 Wis. 2d 497, 510, 553 N.W.2d 539 (Ct. App. 1996) (defense counsel did not perform deficiently by making "a strategic decision not to request a lesser-included instruction because it would be inconsistent with, or harmful to, the general theory of defense").  But that is not what occurred.  The prosecution elected to proceed on both charges.

¶41    Osornio contends that, if he had not been deprived of the benefit of a jury that properly understood, from the start of its deliberations, that it had to follow the lesser-included instruction, there was a reasonable probability of the following occurring. The jury first would have made reasonable efforts at unanimity, by considering all of the relevant evidence, and then reached a deadlock on the reckless homicide charge. Then, it would have sought to reach a verdict on the heroin delivery charge. This would have left Osornio with, at worst, a conviction on the lesser charge.

¶42    After discussing legal standards and additional background, we explain why we agree with Osornio to the extent that he has shown that there is a reasonable probability that he would not have been convicted of reckless homicide if the jury had been given the lesser-included instruction from the start.

### A.    Ineffective Assistance of Counsel Legal Standards

¶43    The Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 7 of the Wisconsin Constitution, guarantee criminal defendants the right to effective assistance of counsel. *State v. Arrington*, 2022 WI 53, ¶71, 402 Wis. 2d 675, 976 N.W.2d 453. In order to be deemed constitutionally ineffective, counsel's performance must be deficient, and the deficient performance must be prejudicial. *Id.* (citing authority that includes *Strickland v. Washington*, 466 U.S. 668 (1984)).

¶44    To establish deficient performance, the defendant must prove that "'counsel's performance fell below an objective standard of reasonableness.'" *Id.*, ¶72 (quoting *State v. Maday*, 2017 WI 28, ¶54, 374 Wis. 2d 164, 892 N.W.2d 611). Courts are to "'indulge a strong presumption'" that counsel's challenged

performance fell "'within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689).

¶45    To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, ¶74 (quoting *State v. Domke*, 2011 WI 95, ¶54, 337 Wis. 2d 268, 805 N.W.2d 364).

### B.    Additional Background

¶46    The circuit court here initially instructed the jury on the elements of Counts One and Two and directed it to attempt to return verdicts on both counts, without informing it that the heroin delivery charge was a lesser-included offense of the reckless homicide charge on the facts alleged by the prosecution. The jury began deliberations shortly before 12:30 p.m. on the second day of the two-day trial.

¶47    Shortly before 2:05 p.m., the jury sent out a note with this question: "Do[] the different colors of heroin mean two different sources?" Neither party cites record evidence that places the substance of this question about heroin colors in meaningful context. For our purposes, this note stands only for the proposition that the jury appeared to be fully engaged in deliberations based on the initial instructions. The parties both recommended, and the circuit court agreed, to respond only that the jury should rely on its collective memory of the evidence. The jury resumed deliberations.

¶48    At about 3:45 p.m., having deliberated for a total of over three hours, the jury sent out a second note with two statements and a question: "We have a

conclusion on Count Two. We cannot come to an agreement on Count One. How should we proceed?"

¶49    In response, the circuit court decided to give the jury the "Supplemental Instruction on Agreement," WIS JI—CRIMINAL 520, commonly referred to as the "*Allen* instruction," after *Allen v. United States*, 164 U.S. 492 (1896), which may be given after a jury has expressed an inability to reach an agreement.[11] After giving the *Allen* instruction and sending the jury back out to resume deliberating, the court asked counsel outside the jury's presence to consider the court's options going forward "if the jury continues to be deadlocked on Count 1."

¶50    At 6:20 p.m., with the jury still deliberating, the attorneys went back on the record outside the presence of the jury so that the defense could raise an issue. The issue was multiplicity. The prosecution agreed that the two counts were multiplicitous.

---

[11] The *Allen* instruction, given by circuit court here, states:

> You jurors are as competent to decide the disputed issues of fact in this case as the next jury that might be called to determine such issues.

> You are not going to be made to agree, nor are you going to be kept here until you agree. It is your duty to make an honest and sincere attempt to arrive at a verdict. Jurors should not be obstinate; they should be open-minded; they should listen to the arguments of others, and talk matters over freely and fairly, and make an honest effort to come to a conclusion on all the issues presented to them.

> You will please retire again to the jury room.

21

¶51    The defense position was that, if the jury had been instructed from the start regarding its required approach, given the greater and lesser charged offenses, it would have returned a verdict on Count Two when it announced at about 3:45 p.m. that it could not reach an agreement on Count One, with no need for the *Allen* instruction.  This was so, the defense argued, because the jury would have understood, from the lesser-included instruction, that if it was unable to reach a unanimous verdict on the only charge, reckless homicide, then it should attempt to return a verdict on the lesser-included offense of heroin delivery.  For these reasons, the defense requested that the circuit court "call the jury in, accept [its] verdict on Count 2, and excuse" the jury.  In contrast, the prosecution asked the court to give the jury the lesser-included instruction and advise it to continue to deliberate.

¶52    The circuit court denied the defense motion to essentially accept from the jury a verdict on Count Two, ruling that the jury should "continue to deliberate on Count 1 because I don't think they're deadlocked yet.  They're still requesting information, and they're still deliberating on Count 1."  At the same time, the court (at least initially) also did not follow the prosecution recommendation to provide the lesser-included instruction.

¶53    In the meantime, the jury had sent out a third note, indicating that it was written at 6:10 p.m.  This note asked for a hard copy of a series of text messages between Osornio and A.B.  These texts had been admitted as evidence and published to the jury via a screen during the trial.  With the agreement of the parties, the circuit court directed that the jury be provided with a hard copy of the text messages.

¶54 At around 7:08 p.m., with the jury continuing to deliberate, the prosecution requested that the court give the jury a modified version of the lesser-included instruction, tailored to the circumstances. The defense did not object to the wording of this modified lesser-included instruction, although the defense preserved its preference for a different general approach. The court agreed to give this instruction, doing so at approximately 7:16 p.m. The following was the substantive text:

> You should make every reasonable effort to agree unanimously on your verdict on Count 1. However, if after full and complete consideration of the evidence, you conclude that further deliberation would not result in unanimous agreement on Count 1, you should sign your verdict on Count 2 and inform the Court of your verdict.

We observe that, by the time the jury received this modified lesser-included instruction, it had been deliberating for a total of approximately six and one-half hours.

¶55 At about 8:16 p.m., the jury returned with verdicts of guilty on both Count One and Count Two. The circuit court entered a conviction on Count One only.

¶56 As referenced above, Osornio filed a postconviction motion claiming ineffective assistance of trial counsel based on the multiplicity issue, and at the *Machner* hearing, both defense counsel testified that they did not notice the multiplicity issue until shortly before they returned to court at approximately 6:20 p.m., and there is no dispute that the prosecution and the circuit court also had not noticed that the counts were multiplicitous.

¶57 The circuit court denied the postconviction motion. The court assumed deficient performance and concluded that Osornio failed to show

23

prejudice as a result of the assumed deficiencies. The court did not discount the defense position that, if the jury had been given the lesser-included instruction from the start, then it might have returned a guilty verdict on the lesser-included delivery charge alone. But in denying the motion, the court reasoned that the following was an "equally plausible" outcome: if the jury had been given the lesser-included instruction from the start, then it "would not have reached a point of deadlock" on the reckless homicide charge before it fully considered all of the evidence and the legal standards, and that, after such full consideration, the jury would have returned a proper guilty verdict on reckless homicide, with no need to move on to consider the lesser-included offense. The court stated that "[t]here is no indication in the record that [the jury] had exhausted all reasonable efforts to agree on the reckless homicide charge after deliberation of about three hours, after factoring in time for lunch."

## C.    Analysis

¶58    We now explain why we conclude that Osornio has shown that defense counsel was deficient in failing to timely recognize and address the multiplicity issue. We also conclude that Osornio has shown at least a reasonable probability that, if counsel had done so, the result of the trial would have been different, and that this undermines our confidence in the outcome of the trial.

*Deficient Performance*

¶59    The State on appeal implicitly assumes that defense counsel's performance was deficient. The circuit court explicitly made the same assumption in ruling on the postconviction motion. These assumptions are appropriate. The performance of counsel was objectively unreasonable. Even after taking into account the "'strong presumption'" that their performance fell "'within the wide

range of reasonable professional assistance,'" we conclude that it "'fell below an objective standard of reasonableness.'" *See Arrington*, 402 Wis. 2d 675, ¶72 (quoted sources omitted). Overlooking the multiplicity issue was not reasonable professional assistance. It is true that the issue was caught in time to allow the court to avoid imposing multiple punishments for the same offense. But Osornio was nevertheless deprived of the opportunity to request the lesser-included instruction.

¶60 As noted above, both defense counsel at the *Machner* hearing explained that they entirely missed the issue until the jury was deep into its deliberations and that they did not have a sound strategic reason not to seek the lesser-included instruction. The circuit court credited this testimony. That distinguishes this case from those cases in which only the greater offense is charged and defense counsel adopts, or could reasonably adopt, an all-or-nothing strategy of encouraging the jury to acquit by not giving it the option of convicting on a lesser-included offense. *See supra* note 10. Again, the prosecution pursued both offenses, and there is no evidence that could support a conclusion that defense counsel had or could have had a strategic reason not to request the lesser-included instruction.

¶61 Further, we see no reason to think that the circuit court here would have had a basis to deny a motion to give the lesser-included instruction if the defense had requested it. The missed potential benefit to Osornio should have been obvious from the time the case was charged through to the time of trial. Applying the objective standard of reasonableness, the three overlapping elements in the two counts should have prompted double jeopardy concerns by defense counsel before trial.

¶62 Multiplicity issues present questions of law. *State v. Davison*, 2003 WI 89, ¶15, 263 Wis. 2d 145, 666 N.W.2d 1. Here, defense counsel was not required to undertake factual investigation or deep research in order to spot the multiplicity issue and take effective related steps. This area of Wisconsin law is not new or obscure. *See* WIS JI—CRIMINAL 112 (noting an original publication date of 1962); *see also Harrell v. State*, 88 Wis. 2d 546, 572-74, 277 N.W.2d 462 (Ct. App. 1979) (citing authority that includes F. Remington and A. Joseph, Charging, *Convicting and Sentencing the Multiple Crim. Offender*, 1961 WIS. L. REV. 528, 545, and 1 WHARTON'S CRIM. L. AND PROC., § 32, at 67-68 (Anderson ed. 1957)).

¶63 It is true that some multiplicity issues can be nuanced. There can be complicated disputes about the manner in which the charges brought by the State, or the proof at trial, splits an alleged course of conduct into multiple violations of the same statute. *See State v. Koller*, 2001 WI App 253, ¶¶42-44, 248 Wis. 2d 259, 635 N.W.2d 838 (referring to "the subtlety of some multiplicity challenges"), *holding modified by State v. Schaefer*, 2003 WI App 164, ¶52, 266 Wis. 2d 719, 668 N.W.2d 760; *see also Davison*, 263 Wis. 2d 145, ¶38 (noting that care must be taken to distinguish between charging options available to prosecutors and prohibited punishments). Defense counsel are in some cases presented with "complicated" choices, "involving legal expertise and trial strategy," in deciding whether to request one or more lesser-included instructions. *State v. Eckert*, 203 Wis. 2d 497, 509, 553 N.W.2d 539 (Ct. App. 1996). But here, we discern nothing in the record or in the uncontested postconviction testimony of trial counsel that provides a reason to think that the issue should have been difficult for defense counsel to spot or that, once spotted in a timely manner, it should have been difficult for defense counsel to address.

*Prejudice*

¶64    We conclude that it is reasonably probable that the outcome of Osornio's trial would have been different if defense counsel had taken the following simple steps, consistent with defense counsels' postconviction hearing testimony, which was credited by the circuit court. Given that the prosecution decided to pursue both charges at trial, counsel should have called the multiplicity problem to the attention of the circuit court and requested the lesser-included instruction well before counsel eventually took these steps. If that had happened, there is at least a substantial likelihood that the jury would have returned a verdict on the heroin delivery count alone.

¶65    It appears very likely that the hypothetical verdict on the heroin delivery charge alone at about 3:45 p.m. would have been guilty. This is because, if the jury's agreement had been for a verdict of not guilty on Count Two, then the jury should have immediately recognized that it was obligated to return a verdict of not guilty on Count One, since all of the elements of Count Two were included in Count One.

¶66    But of course a verdict of guilty on Count Two alone would have been a result decidedly more favorable for Osornio than a conviction for reckless homicide alone. And that more favorable result was a distinct possibility, in light of the jury's 3:45 p.m. note. The note can be reasonably interpreted to mean that the jury had reached a deadlock on the reckless homicide charge, despite reasonable efforts, but that it was fully prepared to return a verdict on the heroin delivery charge. On these facts, there is at least a reasonable probability that, if the jury had been given the lesser-included instruction from the start, then by about 3:45 p.m. it would have considered itself to have already made "every

reasonable effort to agree unanimously on [its] verdict on the" greater offense of reckless homicide, "after full and complete consideration of the evidence," and, accordingly, proceeded to resolve the lesser charge of heroin delivery with a single verdict on that count. *See* WIS JI—CRIMINAL 112.

¶67 As we have noted, making the prejudice-prong probability determination requires consideration of the "totality of the evidence" that was before the finder of fact. *See **Strickland***, 466 U.S. at 695. But even when we take into account the benefit to the prosecution of the other-acts evidence discussed above, there were potentially viable defense theories. This included the defense theory that, even if A.B. had gotten heroin from Osornio, and even if A.B. had used that heroin, that use was not a substantial factor in A.B.'s death, given evidence of contemporaneous alcohol consumption, ongoing heart disease, and signs of chronic alcohol abuse. There is no room for an argument that Osornio cannot show prejudice because the evidence was so strong that the jury would have convicted Osornio of reckless homicide regardless of the lesser-included offense issue.

¶68 We observe that aspects of the lesser-included instruction somewhat overlap with the substance of the ***Allen*** instruction, in that the lesser-included instruction urges the jury to make "every reasonable effort to agree" "after full and complete consideration of the evidence" on the greater offense. The lesser-included instruction is not as strongly worded as the ***Allen*** instruction, but it points in the same direction. Therefore, if the jury here had been given the lesser-included instruction from the start, it would have been directly encouraged to bear down, from the first minutes of its deliberations, on the reckless homicide charge before moving on, if necessary, to consider the heroin delivery charge.

¶69    With this dynamic in mind, there is merit to the State's argument, as far as it goes, that if the jury had been given the lesser-included instruction from the start, it might *not*, as of around 3:45 p.m., have considered itself to have made "every reasonable effort to agree unanimously on [its] verdict on the" greater offense of reckless homicide, "after full and complete consideration of the evidence." This is one possibility. But given the record summarized above, the State fails to persuade us that there is not a substantial likelihood that a jury given this instruction from the start would have used its initial hours of deliberation to conclude—in applying all of the instructions, including the lesser-included instruction—that it should return a verdict of guilty on the heroin delivery count alone.

¶70    Expanding on this topic, the State makes a fair point in emphasizing the following. From 3:45 p.m. onwards, each time the jury was given the direction to, or at least allowed to, continue to deliberate, it did not report itself to be hung on either count—not after it received the *Allen* instruction after it sent out the 3:45 p.m. note, not after it sought the text messages via the note sent at 6:10 p.m., and not after it received the modified lesser-included instruction at 7:16 p.m. We agree that these extended periods of additional deliberation increase the probability that, even if the jury had been given the lesser-included instruction from the start, it would have returned a guilty verdict on Count One alone at some point. But these extended efforts by the jury do not establish what would have happened by about 3:45 p.m. under those circumstances. That is, the jury's extended efforts do not reduce to the level of mere conceivability or insubstantiality the probability that it would have returned a guilty verdict on Count Two alone.

¶71 For these reasons, we disagree with the circuit court's conclusion that the record contains "no indication" that the jury "exhausted all reasonable efforts to agree on the reckless homicide charge after deliberation of about three hours, after factoring in time for lunch." The jury's unqualified statements in the 3:45 p.m. note create a substantial probability that the jury might have returned a verdict on Count Two alone by that point, which would have left the court with no reason to give the *Allen* instruction. It is true that, by all appearances, the jury dutifully resumed deliberations after receiving the *Allen* instruction, following its direction to redouble the jury's efforts at reaching one or more verdicts. But again, the fact of extended subsequent jury deliberations, which eventually produced two guilty verdicts, is not necessarily inconsistent with a reasonable probability that, had the jury received the lesser-included instruction from the start, it would have returned a guilty verdict on Count Two alone.

¶72 The circuit court essentially conceded as much when it stated in its written decision on the postconviction motion that it appeared to be "equally plausible" either way as to what the jury might have done if it had been given the lesser-included instruction from the start. We need not decide whether it is somewhat more likely, or perhaps somewhat less likely, that the jury under those circumstances would have deadlocked on the greater offense or instead would have returned a verdict of guilty on that offense. Either way, our confidence in the outcome is undermined.

¶73 Our supreme court has emphasized the teaching of the U.S. Supreme Court that a defendant seeking to show prejudice based on deficient performance of counsel does not need to "prove [that] the outcome would 'more likely than not' be different" absent the deficient performance. *State v. Sholar*, 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89 (quoting *Strickland*, 466 U.S. at 693). Instead,

"the prejudice component asks 'whether it is reasonably likely the result would have been different.'" *State v. Langlois*, 2017 WI App 44, ¶20, 377 Wis. 2d 302, 901 N.W.2d 768 (quoting *Harrington v. Richter*, 562 U.S. 86, 111 (2011)). "'The likelihood of a different result must be substantial, not just conceivable.'" *Id.* (quoting *Harrington*, 562 U.S. at 112). Applying these standards here, there is a substantial, and not merely a conceivable, likelihood that a jury that was properly instructed from the start would have reached a more favorable result for Osornio.

¶74  In sum on this issue, we conclude that Osornio has shown both deficient performance by defense counsel at trial and resulting prejudice, which requires the reversal of the judgment of conviction and a new trial.[12]

## CONCLUSION

¶75  For all these reasons, we affirm the circuit court's decision to admit the other-acts evidence, but we reverse its decision to deny the postconviction motion, and we remand for a new trial.

*By the Court*.—Judgment and order reversed and cause remanded with directions.

Recommended for publication in the official reports.

---

[12] Osornio also argues that trial events related to the multiplicity issue require a new trial based on alternative theories of plain error and reversal in the interest of justice. We need not address these alternative theories in light of our conclusion that defense counsel was constitutionally ineffective in connection with the multiplicity issue.